IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br>c/o Department of Justice<br>Washington, D.C. 20530,<br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>FAYEZ SAROFIM<br>Two Houston Center<br>Suite 2907<br>Houston, TX  77010<br><br>　　　　　　　　　Defendant. | Civil Action No. |

### COMPLAINT FOR CIVIL PENALTIES FOR FAILURE TO COMPLY WITH THE PREMERGER REPORTING AND WAITING REQUIREMENTS OF THE HART-SCOTT RODINO ACT

The United States of America, Plaintiff, by its attorneys, acting under the direction of the Attorney General of the United States and at the request of the Federal Trade Commission, brings this civil antitrust action to obtain monetary relief in the form of civil penalties against Defendant Fayez Sarofim ("Sarofim"). Plaintiff alleges as follows:

### NATURE OF THE ACTION

1.　　　Sarofim violated the notice and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a ("HSR Act" or "Act"), with respect to the acquisition of voting securities of Kinder Morgan, Inc. ("KMI") and Kemper Corporation ("Kemper").

1

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to Section 7A(g) of the Clayton Act, 15 U.S.C. § 18a(g), and pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355 and over the Defendant by virtue of Defendant's consent, in the Stipulation relating hereto, to the maintenance of this action and entry of the Final Judgment in this District.

3.      Venue is properly based in this District by virtue of Defendant's consent, in the Stipulation relating hereto, to the maintenance of this action and entry of the Final Judgment in this District.

## THE DEFENDANT

4.      Defendant Sarofim is a natural person with his principal office and place of business at Two Houston Center, Suite 2907, Houston, TX 77010. Sarofim is engaged in commerce, or in activities affecting commerce, within the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. §18a(a)(1). At all times relevant to this complaint, Sarofim had sales or assets in excess of $151.7 million.

## OTHER ENTITIES

5.      KMI is a corporation organized under the laws of Delaware with its principal place of business at 1001 Louisiana Street, Houston, TX 77002. KMI is engaged in commerce, or in activities affecting commerce, within the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. §18a(a)(1). At all times relevant to this complaint, KMI had sales or assets in excess of $15.3 million.

6. Kemper is a corporation organized under the laws of Delaware with its principal place of business at One Kemper Drive, Long Grove, IL 60049. Kemper is engaged in commerce, or in activities affecting commerce, within the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. §18a(a)(1). At all times relevant to this complaint, Kemper had sales or assets in excess of $15.3 million.

## THE HART-SCOTT-RODINO ACT AND RULES

7. The HSR Act requires certain acquiring persons and certain persons whose voting securities or assets are acquired to file notifications with the federal antitrust agencies and to observe a waiting period before consummating certain acquisitions of voting securities or assets. 15 U.S.C. § 18a(a) and (b). These notification and waiting period requirements apply to acquisitions that meet the HSR Act's thresholds. Prior to February 1, 2001, the HSR Act's reporting and waiting period requirements applied to most transactions where the acquiring person would hold more than $15 million of the acquired person's voting securities and/or assets, except for certain exempted transactions. As of February 1, 2001, the size of transaction threshold was increased to $50 million. In addition, there is a separate filing requirement for transactions in which the acquirer will hold voting securities in excess of $100 million, and for transactions in which the acquirer will hold voting securities in excess of $500 million. Since 2004, the size of person and size of transaction thresholds have been adjusted annually.

8. The HSR Act's notification and waiting period requirements are intended to give the federal antitrust agencies prior notice of, and information about, proposed transactions. The waiting period is also intended to provide the federal antitrust agencies with an opportunity to

investigate a proposed transaction and to determine whether to seek an injunction to prevent the consummation of a transaction that may violate the antitrust laws.

9. Section (c)(9) of the HSR Act, 15 U.S.C. § 18a(c)(9), exempts from the requirements of the HSR Act acquisitions of voting securities solely for the purpose of investment if, as a result of the acquisition, the securities acquired or held do not exceed ten percent of the outstanding voting securities of the issuer.

10. Pursuant to Section (d)(2) of the HSR Act, 15 U.S.C. § 18a(d)(2), rules were promulgated to carry out the purposes of the HSR Act. 16 C.F.R. §§ 801-03 ("HSR Rules"). The HSR Rules, among other things, define terms contained in the HSR Act.

11. Pursuant to section 801.13(a)(1) of the HSR Rules, 16 C.F.R. § 801.13(a)(1), "all voting securities of [an] issuer which will be held by the acquiring person after the consummation of an acquisition" – including any held before the acquisition – are deemed held "as a result of" the acquisition at issue.

12. Pursuant to sections 801.13(a)(2) and 801.10(c)(1) of the HSR Rules, 16 C.F.R. § 801.13(a)(2) and § 801.10(c)(1), the value of voting securities already held is the market price, defined to be the lowest closing price within 45 days prior to the subsequent acquisition.

13. Section 801.1(i)(1) of the HSR Rules, 16 C.F.R. § 801.1(i)(1), defines the term "solely for the purpose of investment" as follows:

> Voting securities are held or acquired "solely for the purpose of investment" if the person holding or acquiring such voting securities has no intention of participating in the formulation, determination, or direction of the basic business decisions of the issuer.

14. Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1), provides that any person, or any officer, director, or partner thereof, who fails to comply with any provision of the

4

HSR Act is liable to the United States for a civil penalty for each day during which such person is in violation. From November 20, 1996, through February 9, 2009, the maximum amount of civil penalty was $11,000 per day, pursuant to the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 61 Fed. Reg. 54548 (Oct. 21, 1996). As of February 10, 2009, the maximum amount of civil penalty was increased to $16,000 per day, pursuant to the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 74 Fed. Reg. 857 (Jan. 9, 2009). Pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, § 701 (further amending the Federal Civil Penalties Inflation Adjustment Act of 1990), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 81 Fed. Reg. 42,476 (June 30, 2016), the maximum amount of civil penalty was increased to $40,000 per day.

## DEFENDANT'S VIOLATIONS OF THE HSR ACT

### Failure to File HSR Act Notifications in Connection with Acquisitions of KMI Voting Securities

15. Sarofim was an early investor in KMI and, by August 1999, held KMI shares valued at approximately $50 million. Sarofim's acquisitions of KMI securities up until that time were exempt under the HSR Act because they were covered by the Act's exemption of acquisitions made solely for the purpose of investment.

16. In October 1999, Sarofim became a member of the KMI board, a position that

5

necessarily caused him to participate in the formulation, determination, or direction of the basic business decisions of KMI. As a result, Sarofim could no longer rely on the exemption for acquisitions made solely for the purpose of investment with regard to KMI. Sarofim continued to be a member of KMI's board through 2014.

17. On January 23, 2001, Sarofim acquired 237,500 shares of KMI on the open market. At the time of the acquisition, Sarofim already held voting securities of KMI. The value of the voting securities held by Sarofim after the acquisition was in excess of the then applicable $15 million size of transaction threshold.

18. Although he was required to do so, Sarofim did not file under the HSR Act prior to acquiring KMI voting securities on January 23, 2001, improperly relying on the exemption for acquisitions made solely for the purpose of investment.

19. Sarofim continued to acquire KMI voting securities, through open market purchases and otherwise.

20. On July 16, 2006, Sarofim acquired an additional 1,600 shares of KMI as compensation for serving on KMI's board. As a result of this acquisition, Sarofim held KMI voting securities valued in excess of $113.4 million, the adjusted $100 million threshold in effect at the time.

21. Although he was required to do so, Sarofim did not file under the HSR Act prior to acquiring KMI voting securities on July 16, 2006.

22. On May 30, 2007, Sarofim's KMI voting securities were converted into shares of Knight Holdco, LLC, later named Kinder Morgan Holdco, LLC. This transaction was exempt

from the HSR premerger notification and waiting period requirements. After this transaction, Sarofim no longer held any voting securities of KMI.

23.     On November 11, 2011, Sarofim's shares of Kinder Morgan Holdco, LLC were converted into voting securities of KMI. This transaction was exempt from the HSR premerger notification and waiting period requirements.

24.     On October 25, 2012, Sarofim acquired 300,000 shares of KMI on the open market. As a result of this acquisition, Sarofim held KMI voting securities valued in excess of $682.1 million, the adjusted $500 million threshold in effect at the time.

25.     Although he was required to do so, Sarofim did not file under the HSR Act prior to acquiring KMI voting securities on October 25, 2012.

26.     Sarofim continued to acquire KMI voting securities, on the open market and otherwise, through at least June 4, 2014.

27.     On November 21, 2014, Sarofim made three corrective filings under the HSR Act, for the three notification thresholds he crossed through the 2001, 2006, and 2012 acquisitions. The waiting period on the corrective filings expired on December 22, 2014.

28.     Sarofim was in continuous violation of the HSR Act from January 23, 2001, when he acquired the KMI voting securities valued in excess of the HSR Act's then applicable $15 million size-of-transaction threshold, through May 30, 2007, when he no longer held voting securities of KMI.

29.     Sarofim was again in continuous violation of the HSR Act from October 25, 2012, when he acquired the KMI voting securities valued in excess of the then $682.1 million threshold

then in effect, through December 22, 2014, when the waiting period expired.

### Failure to File HSR Act Notification in Connection with Acquisition of Kemper Voting Securities

30. Sarofim was an investor in Teledyne, Inc., an industrial conglomerate that owned Unitrin Inc., the predecessor company to Kemper. In 1990, Unitrin was spun off from Teledyne, and investors in Teledyne, including Sarofim, received pro-rata shares of Unitrin as a result. Sarofim joined the Unitrin board shortly after the spinoff.

31. On May 10, 2007, Sarofim acquired 10,000 shares of Unitrin Inc., the predecessor to Kemper, on the open market. At the time of the acquisition, Sarofim already held voting securities of Unitrin. The value of the voting securities held by Sarofim after the acquisition was in excess of the then applicable size-of-the-transaction threshold of $59.8 million.

32. At the time of the May 10, 2007 acquisition, Sarofim was a member of Unitrin's board of directors, and Sarofim continued to be a member of Kemper's board through 2014.

33. Because he was on the Unitrin board, Sarofim could not rely on the exemption for acquisitions solely for the purpose of investment.

34. Although he was required to do so, Sarofim did not file under the HSR Act prior to acquiring Unitrin voting securities on May 10, 2007.

35. Sarofim continued to acquire Unitrin/Kemper voting securities, through open market purchases and otherwise, through at least September 10, 2008.

36. On or about august 19, 2011, Unitrin changed its name to Kemper.

37. On November 21, 2014, Sarofim made a corrective filing under the HSR Act for the acquisition of Unitrin/Kemper voting securities. The waiting period on the corrective filings

expired on December 22, 2014.

38. Sarofim was in continuous violation of the HSR Act from May 10, 2007, when he acquired the Unitrin voting securities valued in excess of the HSR Act's then applicable $59.8 million size-of-transaction threshold, through December 22, 2014, when the waiting period expired.

## REQUESTED RELIEF

WHEREFORE, Plaintiff requests:

a. That the Court adjudge and decree that Defendant Sarofim's acquisitions of KMI voting securities on January 23, 2001, July 16, 2006, and October 25, 2012, were violations of the HSR Act, 15 U.S.C. § 18a; and that Defendant Sarofim was in violation of the HSR Act each day from January 23, 2001, through May 30, 2007, and from October 25, 2012, through December 22, 2014;

b. That the Court adjudge and decree that Defendant Sarofim's acquisition of Kemper voting securities on May 10, 2007, was a violation of the HSR Act, 15 U.S.C. § 18a; and that Defendant Sarofim was in violation of the HSR Act each day from May 10, 2007, through December 22, 2014;

c. That the Court order Defendant Sarofim to pay to the United States an appropriate civil penalty as provided by the HSR Act. 15 U.S.C. § 18a(g)(1), the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 74 Fed. Reg. 857 (Jan. 9, 2009), and the Federal Civil Penalties Inflation

Adjustment Act Improvements Act of 2015, Pub. L. 114-74, § 701 (further amending the Federal Civil Penalties Inflation Adjustment Act of 1990), and Federal Trade Commission Rule 1.98, 16 C.F.R. 1.98, 81 Fed. Reg. 42,476 (June 30, 2016)

       d.      That the Court order such other and further relief as the Court may deem just and proper; and

       e.      That the Court award the Plaintiff its costs of this suit.

Dated: October 27, 2016

FOR THE PLAINTIFF UNITED STATES OF AMERICA:

_____
Renata B. Hesse
D.C. Bar No. 466107
Acting Assistant Attorney General
Department of Justice
Antitrust Division
Washington, D.C. 20530

_____
Daniel P. Ducore
D.C. Bar No. 933721
Special Attorney

_____
Roberta S. Baruch
D.C. Bar No. 269266
Special Attorney

_____
Kenneth A. Libby
Special Attorney

_____
Jennifer Lee
Special Attorney

Federal Trade Commission
Washington, D.C. 20580
(202) 326-2694